1
2
3
4
5          UNITED STATES DISTRICT COURT
6          EASTERN DISTRICT OF WASHINGTON
7

8   KRIZZA POULSON,                    No. 1:15-CV-03057-JTR

9          Plaintiff,
                                       ORDER GRANTING
10                                     DEFENDANT'S MOTION FOR
11         v.                          SUMMARY JUDGMENT

12  CAROLYN W. COLVIN,
    Commissioner of Social Security,
13

14         Defendant.
15

16         BEFORE THE COURT are cross-Motions for Summary Judgment.  ECF

17  No. 17, 19.  Attorney D. James Tree represents Krizza Poulson (Plaintiff); Special

18  Assistant United States Attorney Jordan D. Goddard represents the Commissioner

19  of Social Security (Defendant).  The parties have consented to proceed before a

20  magistrate judge.  ECF No. 7.  After reviewing the administrative record and briefs

21  filed by the parties, the Court **GRANTS** Defendant's Motion for Summary

22  Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

23                          **JURISDICTION**

24         Plaintiff filed applications for Supplemental Security Income (SSI) and

25  Disability Insurance Benefits (DIB) on December 22, 2011, alleging disability

26  since September 1, 2009, due to depression, post-traumatic stress disorder (PTSD),

27  bipolar disorder, attention deficit disorder (ADD), anxiety, and borderline

28  personality disorder.  Tr. 219-231, 254, 258.   The applications were denied

ORDER GRANTING DEFENDANT'S MOTION . . . . - 1

initially and upon reconsideration.  Tr. 19, 137-145, 148-156.  Administrative Law Judge (ALJ) Stephanie Martz held a hearing on July 24, 2013, at which Plaintiff, represented by counsel, and vocational expert Scott Whitmer testified.  Tr. 55-100.  The ALJ issued an unfavorable decision on August 16, 2013.  Tr. 19-30.  The Appeals Council denied review on February 23, 2015.  Tr. 1-6.  The ALJ's August 16, 2013, decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review on April 20, 2015.  ECF No. 1, 4.

### STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties.  They are only briefly summarized here.

Plaintiff was twenty-nine years old at the alleged date of onset.  Tr. 219.  Plaintiff completed her GED in 2001 and received training as a certified nursing assistant (CNA) in 1998.  Tr. 259, 377.  She last worked in August and September of 2009 at Snokist putting pears in an automatic pealing machine.  Tr. 274, 277.  Plaintiff has prior work as a CNA, a cashier, fruit harvester, and adult home care provider.  Tr. 274-281.  Plaintiff reported she stopped working because of her conditions on September 1, 2009.  Tr. 258.

On August 19, 2011, Plaintiff was evaluated by Jesse McClelland, M.D.  Tr. 375-381.  Dr. McClelland reviewed a biopsychosocial assessment completed in May 2006 and a Form SSA 3368.  Tr. 375.  Plaintiff reported that she had been sober from methamphetamines for two to three months prior to the evaluation.  Tr. 377.  Following a mental status examination, Dr. McClelland diagnosed Plaintiff with attention deficit hyperactivity disorder, major depressive disorder, PTSD, amphetamine dependence in early full remission, alcohol abuse versus dependence in early full remission, rule out cannabis abuse versus dependence, and borderline personality disorder.  Tr. 379.  Dr. McClelland gave Plaintiff a Global Assessment

Functioning (GAF) of 22 and a functional assessment as follows: (1) Plaintiff "probably should not manag[e] her funds"; (2) Plaintiff "should be able to perform simple and repetitive tasks"; (3) "She may struggle with detailed and complete tasks"; (4) Plaintiff "may . . . have difficulty accepting instructions from supervisors and performing work activities on a consistent basis without special or additional instructions"; (5) Plaintiff "would likely have a higher level of difficulty working with supervisors than understanding them"; (6) Plaintiff "would also have difficulty with interactions with coworkers and the public"; (7) Plaintiff "would likely struggle to maintain regular attendance in the workplace"; (8) Plaintiff "would likely have interruptions in the workday secondary to panic attacks and impulsivity"; and (9) Plaintiff "would likely struggle to deal with the usual stress encountered in the workplace." Tr. 379-381.

On January 18, 2012, Plaintiff was evaluated by Jan M. Kouzes, Ed.D. Tr. 390-394. Dr. Kouzes completed a clinical interview and a mental status exam. *Id*. She diagnosed Plaintiff with methamphetamine dependence, cannabis abuse, bipolar disorder, and borderline personality disorder. 390. Dr. Kouzes stated that "[a]lthough [Plaintiff's] motivation is low, she might be able to attempt [part-time] work now that she reports that she is clean from meth. There appear to be neurological issues, twitching, jerking movements. She will need a supportive, mentored worksite with repetitive, simple tasks for her to possibly succeed." Tr. 392.

At the hearing, Plaintiff testified that she was living with her boyfriend and prior to that, she had been living with her mother. Tr. 60. She testified that she had a history of using methamphetamines, marijuana, and alcohol and that the methamphetamine use was on a regular basis. Tr. 64. She testified that her "quit date is August 26th of 2012. But [her] last use was June of 2012." *Id*. She further testified that prior to June of 2012, she was using on a daily basis "since 2006 with just periods of, you know, I stopped for six months and . . . I would, you know, end

ORDER GRANTING DEFENDANT'S MOTION . . . - 3

up going back to it." *Id*.  Additionally, she stated that the last time she had six months without using was "the evaluation for - - like I went to the Tri-Cities to get evaluated and in order to be evaluated you have to be clean, so I was clean that six month period." *Id*.  She asserted that the evaluation was in 2012.  *Id*.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes.  *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).  The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error.  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance.  *Id*. at 1098.  Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ.  *Tackett*, 180 F.3d at 1097.  Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).  If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987).  In steps one

through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that physical or mental impairments prevent her from engaging in her previous occupations. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do her past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) specific jobs exist in the national economy which the claimant can perform. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On August 16, 2013, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since September 1, 2009, the alleged date of onset. Tr. 21.

At step two, the ALJ determined Plaintiff had the following severe impairments: affective disorder (depression vs. bipolar), anxiety disorder (PTSD), personality disorder, attention deficit hyperactivity disorder (ADHD), methamphetamine dependence, and cannabis dependence. Tr. 21-22.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 22-23.

At step four, the ALJ assessed Plaintiff's residual function capacity (RFC) and determined she could perform a range of work at all exertional levels but with the following nonexertional limitations: "She can understand, remember, and carry out simple routine tasks. She can have superficial contact with coworkers. She should not work with the general public. She needs additional time to adjust to

workplace changes, but she is able to adjust within a reasonable timeframe." Tr. 23. The ALJ concluded that Plaintiff was not able to perform her past relevant work. Tr. 29.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and RFC, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of cannery worker and fruit farm worker, two. Tr. 29-30. The ALJ found Plaintiff was not under a disability within the meaning of the Social Security Act at any time from the alleged date of onset, September 1, 2009,[1] through the date of the ALJ's decision, August 16, 2013. Tr. 30.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal

_____

[1]Plaintiff had two prior applications for SSI and DIB. Plaintiff filed the first set of applications in 2008. Tr. 109. These were denied at reconsideration on November 14, 2008, and Plaintiff's request for a hearing was dismissed on April 23, 2010, after she failed to appear at a hearing. Tr. 51-53, 101-103, 109. The second set of applications were filed on June 24, 2011. Tr. 106-107. These applications were denied initially on September 20, 2011, and not appealed. Tr. 128-134. Because the ALJ was aware of the prior applications and accepted, without comment, an alleged onset date prior to the September 20, 2011, denial, the Court will treat the ALJ's actions as a de facto reopening of the June 24, 2011, applications. *See Lewis v. Apfel*, 236 F.3d 503, 510 (9th Cir. 2001). In contrast, the final determination of the 2008 applications was the November 14, 2008, reconsideration determination, which predates Plaintiff's alleged date of onset. Therefore, the Court will not treat the 2008 applications as reopened.

ORDER GRANTING DEFENDANT'S MOTION . . . - 6

standards.  Plaintiff contends the ALJ erred by (1) failing to properly consider Plaintiff's testimony about the severity of her symptoms, (2) failing to accord weight to the opinions of Dr. McClelland and Dr. Kouzes, and (3) failing to consider all of Plaintiff's limitations in the residual functional capacity finding.

## DISCUSSION

## A.    Credibility

Plaintiff contests the ALJ's adverse credibility determination in this case. ECF No. 18 at 8, 10-11.

The ALJ found Plaintiff not fully credible concerning the intensity, persistence, and limiting effects of her symptoms.  Tr. 25.  The ALJ reasoned that Plaintiff was less than fully credible because (1) her statements regarding substance use were inconsistent, (2) her reported symptoms were inconsistent with her reported activities of daily living, (3) her statements showed she was not motivated to work, (4) her reported symptoms were inconsistent with her lack of treatment, (5) her ability to purchase marijuana, cigarettes, and other substances instead of medication was inconsistent with the reported severity of symptoms, and (6) her reported symptoms were contrary to objective medical evidence.

It is generally the province of the ALJ to make credibility determinations, *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing."  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient:  rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834.

### 1.    Substance Use

The ALJ's first reason for finding Plaintiff less than fully credible, that

Plaintiff made inconsistent statements regarding her substance abuse, Tr. 25, is a specific, clear and convincing reason.

An ALJ may properly consider evidence of a claimant's substance use in assessing credibility. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (ALJ's finding that claimant was not a reliable historian regarding drug and alcohol usage supports negative credibility determination); *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (conflicting or inconsistent testimony concerning alcohol or drug use can contribute to an adverse credibility finding).

On August 19, 2011, Plaintiff reported that she had been sober from methamphetamines for two to three months. Tr. 377. On January 18, 2012, Plaintiff reported to Dr. Kouzes that she had used meth for the past ten years, that she had been clean from meth for six months, and that she was still smoking pot, "when I have it." Tr. 391. On March 6, 2012, Plaintiff reported that she had been sober for the past eight months. Tr. 423. On January 23, 2013, Plaintiff tested positive for cannabis and admitted to using methamphetamines two weeks prior. Tr. 472-473. At the July 24, 2013, hearing, Plaintiff testified that she used methamphetamines, marijuana, and alcohol and used methamphetamine on a regular basis, but her "quit date is August 26th of 2012. But … my last use was June of 2012." Tr. 64. She further testified that prior to June of 2012, she was using "[o]n a daily basis," and when asked how long she had been using daily, Plaintiff replied, "I want to say since - - almost since 2006 with just periods of, you know, I stopped for six months . . . and I would, you know, end up going back to it." *Id*. She testified that her last six month period of sobriety was when she "went to the Tri-Cities to get evaluated and in order to be evaluated you had to be clean, so I was clean that six month period." *Id*. The only psychological evaluation in 2012 was the January 18, 2012, evaluation by Dr. Kouzes in Richland, WA. Tr. 392.

Plaintiff's testimony in July of 2013 that she stopped using in June or

August of 2012 is inconsistent with her report that she was using methamphetamines and cannabis in January of 2013.  Therefore, the ALJ's determination is supported by substantial evidence and is a specific, clear and convincing reason to find Plaintiff less than fully credible.

The ALJ also found that Plaintiff admitted to lying to Dr. McClelland regarding her substance abuse.  Tr. 28.  Plaintiff asserts that she never admitted to lying to Dr. McClelland regarding her substance abuse during the hearing.  ECF No. 17 at 10.  A review of the transcript shows that Plaintiff did not admit to lying to Dr. McClelland regarding her substance use at the hearing, but simply asserted that she used methamphetamines daily since 2006 with periods of sobriety.  Tr. 64.  Nonetheless, the ALJ specifically referred to other times when Plaintiff was inconsistent in reporting her sobriety, including Plaintiff's use of cannabis and methamphetamines in January 2013, which were supported by the record.  Therefore, any error resulting from the ALJ mischaracterizing Plaintiff's testimony regarding Dr. McClelland's evaluation is harmless.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (an error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination").

## 2.    Activities of Daily Living

The ALJ's second reason for finding Plaintiff less than credible, that Plaintiff's activities cast doubt on her alleged limitations, Tr. 26, is a specific, clear, and convincing reason to undermine Plaintiff's credibility.

A claimant's daily activities may support an adverse credibility finding if (1) the claimant's activities contradict her other testimony, or (2) "the claimant is able to spend a substantial part of [her] day engaged in pursuits involving performance of physical functions that are transferable to a work setting."  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).  "The ALJ must make 'specific findings relating to [the daily] activities'

and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Id.* (quoting *Burch v. Barnhart,* 400 F.3d 676, 681 (9th Cir. 2005)). A claimant need not be "utterly incapacitated" to be eligible for benefits. *Fair*, 885 F.2d at 603.

The ALJ found that Plaintiff's ability to plan activities for her daughter showed organization, forethought, planning, simple instructions, and follow-through, and Plaintiff's ability to care for her daughter required her to prepare some meals, clean up after her daughter, and ensure her daughter's well-being. Tr. 26. Additionally, the ALJ found that Plaintiff's testimony that she was living with a boyfriend for the past year, who she met through a mutual friend, showed that she had the ability to meet a stranger and develop an intimate relationship. Tr. 25-26. Finally, the ALJ found that the fact Plaintiff moved from her mother's home to her boyfriend's home showed that could live in different environments. Tr. 26.

Plaintiff asserts that her reported activities are not transferable to full-time work. ECF No. 17 at 14. The ALJ never found that her reported activities were transferable to full-time work; instead, the ALJ's found that Plaintiff's reported daily activities were inconsistent with her alleged limitations. The ALJ summarized Plaintiff's alleged symptoms and limitations, summarized Plaintiff's reported daily activities, and concluded that Plaintiff "made numerous conflicting statements." Tr. 24-26. As such, the ALJ's determination is sufficient under *Orn*. The ALJ's determination meets the specific, clear and convincing standard.

### 3.    Motivation

The third reason the ALJ provided for finding Plaintiff less than fully credible, that her statements showed a lack of motivation to work, Tr. 26, is a specific, clear and convincing reason.

The ALJ may use "ordinary techniques" in addressing credibility. *Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997), and may make inferences "logically flowing from the evidence." *Macri v. Chater,* 93 F.3d 540, 544 (9th Cir.

1996).  The Ninth Circuit has also held that when a claimant "has shown little propensity to work in her lifetime" it negatively affects her credibility regarding her inability to work.  *Thomas*, 278 F.3d at 959.

During a January 18, 2012, evaluation, Dr. Kouzes quoted Plaintiff as stating, "[t]he main reason I am not working today is because I don't have no desire to work.  I don't see myself doing nothing.  I haven't done nothing for a long time.  I mainly sleep my time away.  There's no point to work.  I have food stamps, that's enough," and "I don't really care if I get a job.  I guess it could give me a feeling of looking forward, but I am not looking for a job.  I have been rejected so many times I have no desire to work.  None.  None at all."  Tr. 390-391.  Later in the evaluation, Dr. Kouzes quoted Plaintiff as stating "I don't care about working.  I am not looking."  Tr. 392.  Dr. Kouzes referred to her motivation to work as "low."  *Id*.  At the July 24, 2013, hearing, Plaintiff testified that "I don't have the desire to work.  It's been a long time.  It's been like eight years."  Tr. 65.  The ALJ inquired as to why she did not have the desire to work, to which Plaintiff responded:

> Because I really just want to be a mom.  And I've been rejected for a long time for being a drug addict or whatever, and it's really hard to walk into someplace and not -- and not -- like people are after me, but it feels like people look down on you because of the drug use or what have you.  And I haven't -- I haven't had to actually go out in the work field or apply myself that way and I don't like crowds of people.  I got -- I get really fidgety anxiety.  I've lost a lot of time with my children.

Tr. 65.

Considering Plaintiff made repeated statements that she did not want to work, it was reasonable for the ALJ to conclude that Plaintiff's lack of motivation to work negatively affects her credibility.

Plaintiff asserts that the ALJ erred by failing to mention the Plaintiff's full statement at the hearing, which referenced discomfort in crowds and feelings of

anxiety.  ECF No. 17 at 14.  But, Plaintiff's statements throughout the record show that she did not have the desire to work.  Therefore, the ALJ's determination that the lack of desire to work is inconsistent with the reported symptoms is supported by substantial evidence and is a specific, clear and convincing reason to conclude that Plaintiff was less than fully credible.

### 4.    Lack of treatment

The ALJ's fourth reason for finding Plaintiff less than fully credible, her lack of treatment, Tr. 26, meets the specific, clear and convincing standard. Noncompliance with medical care or unexplained or inadequately explained reasons for failing to seek medical treatment casts doubt on a claimant's subjective complaints.  20 C.F.R. §§ 404.1530, 416.930; *Fair*, 885 F.2d at 603; *Macri*, 93 F.3d at 544 (finding the ALJ's decision to reject the claimant's subjective pain testimony was supported by the fact that claimant was not taking pain medication). The ALJ noted that Plaintiff had not had treatment in the last year leading up to the decision and that her health benefits through the State of Washington were denied and she did not appeal the decision because she was "tired of being denied."  Tr. 26.  The ALJ noted that up to that point, the State of Washington had been providing Plaintiff with health coverage and had not repeatedly denied her benefits.  Tr. 26.  While the record does not affirmatively show that Plaintiff was receiving health insurance from the State of Washington consistently until 2012, it does establish that she was approved in 2008 based on an assumption she met listing 12.04, Tr. 448, and she was denied benefits following Dr. Kouzes' evaluation in 2012.  Tr. 469.

Here, despite Plaintiff's allegations that her mental health impairments kept her from working, she failed to receive treatment or take medication by not appealing the denial for medical benefits because she was "tired of being denied." Tr. 69.  The ALJ found that "tired of being denied" was not an adequate explanation for failing to seek treatment considering there was evidence that the

State of Washington had been providing benefits previously.  The Court agrees.

### 5.    Marijuana, cigarettes, and other substances

The ALJ found that "the fact that [Plaintiff] has continued to use her financial resources to purchase marijuana, cigarettes, and other substances instead of medication undermines her allegations about the severity of her impairments even more."  Tr. 26.  This is not a specific, clear and convincing reason to find Plaintiff less than fully credible.

Plaintiff reported that she "has never been a daily pot smoker, buy only ever did it once in a while without ever really buying it herself."  Tr. 378.  Otherwise, the record is void of any discussion regarding how Plaintiff paid for cigarettes, marijuana, or other illicit drugs during the relevant time period.  Therefore, the ALJ's conclusion that Plaintiff paid for cigarettes, marijuana, or other illicit drugs with personal funds that could be used to pay for medical care is not supported by substantial evidence.  However, any error resulting from this determination is harmless as the ALJ provided other legally sufficient reasons to find Plaintiff less than fully credible.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008) (upholding an adverse credibility finding where the ALJ provided four reasons to discredit the claimant, two of which were invalid); *Batson*, 359 F.3d at 1197 (affirming a credibility finding where one of several reasons was unsupported by the record); *Tommasetti*, 533 F.3d at 1038 (an error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination").

### 6.    Contrary to the objective medical evidence

The ALJ's final reason for finding Plaintiff less than credible, i.e. that Plaintiff's symptoms were not supported by objective medical evidence, specifically those from Yakima Neighborhood Health Services (YNHS), Tr. 26-27, supports the ALJ's unfavorable credibility determination.  Although it cannot serve as the sole ground for rejecting a claimant's credibility, objective medical evidence

is a "relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ determined that the records from YNHS showed Plaintiff was able "to provide sufficient information to her providers, interact appropriately with them, and persist through the evaluations." Tr. 27. The ALJ noted that Plaintiff alleged a lack of focus, being easily frustrated, a lack of desire, an inability to complete tasks, and overwhelming anxiety. Tr. 25. Despite these assertions, the ALJ noted that records from YNHS showed she had a normal affect, intact memory, average intelligence, normal attention, fair reasoning, fair judgment, and logical and unremarkable thought. Tr. 27. Considering there are additional findings supporting an unfavorable credibility determination, as discussed above, this reason is sufficient to support the ALJ's ultimate finding.

Based on the foregoing, the ALJ provided specific, clear and convincing reasons to support her determination that Plaintiff was less than fully credible.

**B.    Evaluation of Medical Evidence**

Plaintiff argues the ALJ failed to properly consider and weigh the medical opinions expressed by Dr. McClelland and Dr. Kouzes. ECF No. 17 at 7-16.

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester*, 81 F.3d at 830. The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician. *Orn*, 495 F.3d at 631. The ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id.*

When an examining physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons. *Lester*, 81 F.2d at 830. When an examining physician's opinion is contradicted by

ORDER GRANTING DEFENDANT'S MOTION . . . - 14

another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion of the examining physician.  *Id*. at 830-831.

### 1.    Dr. McClelland

The ALJ gave Dr. McClelland's opinion "only partial weight."  Tr. 27.  The ALJ agreed that Plaintiff had significant cognitive and social deficits, but "did not find the report entirely helpful."  *Id*.  First, the ALJ noted that Dr. McClelland used the words "may," "likely," and "struggle," in her opinion and these words did not provide a finite opinion about what Plaintiff could and could not do.  *Id*.  The Plaintiff failed to challenge this determination in her opening brief,  ECF No. 17, but does raise the argument in her reply.  ECF No. 20 at 1.

Dr. McClelland's opinion did include limitations that included introductory phases lacking finite limitations: Plaintiff "*probably* should not manag[e] her funds"; "She *may* struggle with detailed and complete tasks"; Plaintiff "may . . . have difficulty accepting instructions from supervisors and performing work activities on a consistent basis without special or additional instructions"; Plaintiff "*would likely* have a higher level of difficulty working with supervisors than understanding them"; Plaintiff "would also have difficulty with interactions with coworkers and the public"; Plaintiff "*would likely* struggle to maintain regular attendance in the workplace"; Plaintiff "*would likely* have interruptions in the workday secondary to panic attacks and impulsivity"; and Plaintiff "*would likely* struggle to deal with the usual stress encountered in the workplace."  Tr. 380-381 (emphasis added).  These limitations are ambiguous.  They neither preclude the activities, nor do they define the frequency at which Plaintiff could perform these activities.  Therefore, the ALJ's rationale of Dr. McClelland's opinion lacking specificity is a specific reason and a legitimate reason to give her opinion less weight.

Second, the ALJ found that Dr. McClelland's opinion of Plaintiff's limitations was not consistent with the mental status examination findings and

observations.  Tr. 27-28.  An ALJ may cite internal inconsistencies in evaluating a physician's report.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  The mental status examination conducted by Dr. McClelland showed everything was normal except for an anxious affect and only fair judgement.  Tr. 378-379.  The ALJ noted that Dr. McClelland found the Plaintiff to be polite, cooperative, alert, oriented, had intact memory, good knowledge, fair judgement, normal concentration, and intact abstract thinking.  Tr. 28.  Yet, she found that Plaintiff's functional ability was very limited as a result of ADHD, major depressive disorder, and PTSD.  The ALJ is accurate in noting that Plaintiff had a relatively normal mental status exam that did not support the severe limitations opined.  As such, the ALJ's rationale in this regard is supported by substantial evidence and free of error.

Third, the ALJ found that Dr. McClelland did not review any other records and appeared to rely heavily on Plaintiff's self-reports.  Tr. 28.  A doctor's opinion may be discounted if it relies on a claimant's unreliable self-report.  *Bayliss*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Tommasetti*, 533 F.3d at 1041.  However, the ALJ must provide a basis for her conclusion that the provider's opinion was based on the claimant's self-reports.  *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014).  In the evaluation report, Dr. McClelland stated that her review of the records included a biopsychosocial assessment connected in May 2006, as well as Form SSA 3368.  Tr. 375.  A biopsychosocial assessment dated May 26, 2006, is in the record, but the assessment predates the alleged date of onset, is unsigned, and the testing is limited to a mental status exam.  Tr. 314-318.  SSA Form 3368 is a Disability Report – Adult form and is a questionnaire completed by Plaintiff.  Tr. 257-264.  In the decision, the ALJ simply asserted that Dr. McClelland's evaluation was based on Plaintiff's self-reports without providing a basis for such a conclusion.  Tr. 28.  Therefore, this is not an adequate evidentiary basis to reject the opinion of Dr. McClelland.  However, any resulting error is harmless, as the

ALJ provided other legally sufficient reasons to give limited weight to Dr. McClelland's opinion. *See Tommasetti*, 533 F.3d at 1038 (an error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination").

Fourth, the ALJ found that a GAF of 22 was not supported in Dr. McClelland's examination findings or the findings of Plaintiff's other providers. Tr. 28. An ALJ may cite internal inconsistencies in evaluating a physician's report. *Bayliss*, 427 F.3d at 1216. The only testing performed by Dr. McClelland was a mental status examination, in which everything was normal except for an anxious affect and only fair judgment. Tr. 378-379. Yet, Dr. McClelland gave Plaintiff a GAF of 22 "due to severe impairment in most areas of function." Tr. 379. A GAF score between 21 and 30 indicates "[b]ehavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgement (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends)." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. Text Revision 2000). Dr. McClelland found Plaintiff to be well-groomed with good hygiene and appropriate dress, she was polite and cooperative with good eye contact, her thought process was linear and goal directed, her speech was fluent with normal rate, tone and volume, and there were no obvious obsessions or delusions noted. Tr. 378. The ALJ determined that the level of function associated with a GAF of 22 was not consistent with Dr. McClelland's findings on the examination. Tr. 27-28. The ALJ's determination is supported by substantial evidence, therefore this Court will not disturb the ALJ's finding.

As for evaluations by other providers, Dr. Kouzes gave Plaintiff a GAF of 50, finding Plaintiff with an unkempt appearance, intermittent eye contact, psychomotor agitation, she was cooperative, but irritable, she did not endorse any

hallucinations or delusions, and her speech was normal.  Tr. 391-393.  The reports
form Fawad Tufail, M.D., noted that there is no history of depression and no
history of suicidal ideation.  Tr. 388.  Records from YNHS show Plaintiff ranging
from "very agitated, but cooperative," to "cooperative and pleasant, [Plaintiff] is
happy and smiling at this time."  Tr. 484, 494.  "Crisis Documentation" from
Central Washington Comprehensive Mental Health described Plaintiff as "affect is
slightly labile.  Mood elated.  Reports difficulty sleeping.  No delusions or
hallucinations.  Circumstantial thought … at times," and Plaintiff was given a GAF
of 45.  Tr. 473, 716.  None of these reports appear consistent with a GAF of 22 as
defined in the DSM-IV.  Therefore this is a legally sufficient reason to give limited
weight to the opinion.

Fifth, the ALJ found that the Plaintiff gave false information to Dr.
McClelland regarding her substance use.  Tr. 28.  As discussed above, Plaintiff did
not admit to lying to Dr. McClelland regarding her drug use at the hearing.
However, any error resulting from this determination is harmless as the ALJ
provided other legally sufficient reasons to give limited weight to Dr.
McClelland's opinion.  *See Tommasetti*, 533 F.3d at 1038.

Finally, the ALJ also found that Dr. McClelland's opinion was inconsistent
with the treatment records from YNHS.  Tr. 26-28.  Plaintiff argues that the ALJ
ignored the records that described Plaintiff as depressed, agitated, and anxious.
ECF No. 17 at 16.  On February 28, 2012, Jessica C. Wynne, ARNP stated that
Plaintiff was oriented to time, place, person, and situation, her affect was normal,
she was positive for anhedonia, she was agitated, she was anxious, she was not
euphoric, she had flight of ideas, she had increased activity, she had poor attention
span and concentration, and she had pressured speech.  Tr. 493-494.  She was
described as "very agitated, but cooperative."  Tr. 494.  On March 5, 2012, Jody B.
Gray, ARNP, noted Plaintiff was alert and oriented with no unusual anxiety or
evidence of depression.  Tr. 491.  On March 6, 2012, Laurie L. Jones, MSW

ORDER GRANTING DEFENDANT'S MOTION . . . - 18

observed Plaintiff's appearance was appropriate, she was oriented to person, place, time, and situation, her behavior was agitated, her psychomotor behaviors were hyperactive, her speech was pressured, her affect was appropriate, and mood was depressed and her memory was intact. Tr. 487. On May 16, 2012, Nurse Gray observed that Plaintiff was oriented to time, place, person, and situation, her affect was normal, she was positive for anhedonia, she was not agitated, and not anxious. Tr. 484. She was described as "cooperative and pleasant, [Plaintiff] is happy and smiling at this time." *Id*. Here, two of the four evaluations are inconsistent with Dr. McClelland's opinion and the other two arguably support the opinion. The ALJ determined that the records did not support the opinion. Tr. 28. If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. Therefore, the Court will not disturb the ALJ's determination, and the ALJ provided a legally sufficient reason to give Dr. McClelland's opinion limited weight.

### 2.    Dr. Kouzes

The ALJ gave Dr. Kouzes' opinion "no weight." Tr. 28. First, the ALJ found that Dr. Kouzes believed that Plaintiff had been sober for six months even though Plaintiff admitted to using substances on a daily basis prior to mid-2012. Tr. 28. Plaintiff testified that she was sober the six months leading up to Dr. Kouzes' evaluation. Tr. 64. As discussed above, the Plaintiff was inconsistent in reporting her drug use throughout the record, and the ALJ found Plaintiff less than fully credible in regards to reporting her drug use and supported that determination with legally sufficient reasons. *See supra*. Therefore, the ALJ's mistrust of Dr. Kouzes' opinion because Plaintiff's substance abuse may have affected her determination, Tr. 28, is a legally sufficient reason to reject Dr. Kouzes' opinion.

Second, the ALJ found that Dr. Kouzes relied on Plaintiff's self-reports. Tr. 28. A doctor's opinion may be discounted if it relies on a claimant's unreliable self-report. *Bayliss*, 427 F.3d at 1217; *Tommasetti*, 533 F.3d at 1041. However,

ORDER GRANTING DEFENDANT'S MOTION . . . - 19

the ALJ must provide a basis for her conclusion that the provider's opinion was based on the claimant's self-reports. *Ghanim*, 763 F.3d at 1162. Dr. Kouzes completed a clinical interview and a mental status exam. Tr. 391-393. The clinical interview contained mostly quotes of Plaintiff's statements and the mental status exam revealed normal results except that she was irritable, her mood was labile, she required instructions to be repeated, and she had poor impulse control. *Id.*   In her decision, the ALJ based her finding that Dr. Kouzes relied on Plaintiff's self-reports by noting that Dr. Kouzes referenced Plaintiff's statements throughout the report. Tr. 28. The ALJ's finding is supported by substantial evidence as Dr. Kouzes's report is full of quotations from Plaintiff and found Plaintiff unable to work full time in light of a fairly normal mental status exam. Therefore, this is a legally sufficient reason to reject Dr. Kouzes' opinion.

In conclusion, the ALJ provided legally sufficient reasons to accord limited weight to Dr. McClelland's opinion and reject Dr. Kouzes' opinion.

**C.    Residual Functional Capacity**

Plaintiff argues that the ALJ's residual functional capacity did not contain all of Plaintiff's impairments. ECF No. 17 at 17-18. First, Plaintiff argued that the ALJ failed to consider the testimony of the vocational expert that he would expect someone with approximately two monthly unscheduled, unpredictable absences, as being unable to maintain employment. EFC No. 17 at 17. Plaintiff essentially asserts that she would miss two work days a month. In her briefing, Plaintiff cited her testimony as evidence to support such a limitation. ECF No. 17 at 17. The ALJ found Plaintiff to be less than fully credible and supported that determination with legally sufficient evidence. *See supra*. Therefore, Plaintiff's argument is unfounded.

Second, Plaintiff argues that the ALJ's residual functional capacity did not contain Plaintiff's limitations around crowds and her weekly decompensations. ECF No. 17 at 18. Again, Plaintiff cites evidence from Dr. McClelland and

Plaintiff's testimony to support these assertions. *Id*. The ALJ gave Dr. McClelland's opinion limited weight and found Plaintiff less then fully credible and supported both of these findings with legally sufficient reasons. *See supra*. Therefore, Plaintiff's argument that the ALJ's residual functional capacity assessment and the hypothetical to the vocational expert failed to include these limitations is without merit.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS ORDERED**:

1. Defendant's Motion for Summary Judgment, **ECF No. 19**, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 17**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Defendant** and the file shall be **CLOSED**.

DATED April 27, 2016.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE